[910 NE2d 976, 883 NYS2d 147]

Eurycleia Partners, LP, et al., Appellants, v Seward & Kissel, LLP, Respondent, et al., Defendants.

Argued April 29, 2009; decided June 4, 2009

554

**POINTS OF COUNSEL**

*Reed Smith LLP,* New York City (*Lance Gotthoffer, Gil Feder, Darren Pascarella* and *Casey D. Laffey* of counsel), *Bartlett, Pontiff, Stewart & Rhodes, P.C.,* Glens Falls (*Richard J. Bartlett* and *Robert S. McMillen* of counsel), for appellants. I. The amended complaint pleads fraud. (*Breard v Sachnoff & Weaver,*

*Ltd.,* 941 F2d 142; *Cohen v Goodfriend,* 665 F Supp 152; *Securities & Exch. Commn. v Frank,* 388 F2d 486; *Goldfine v DeEsso,* 309 AD2d 895; *Koncelik v Abady,* 179 AD2d 942; *In re Simon II Litig.,* 407 F3d 125; *Fraternity Fund Ltd. v Beacon Hill Asset Mgt.,* 376 F Supp 2d 385; *Calcutti v SBU, Inc.,* 273 F Supp 2d 488; *Securities & Exch. Commn. v Coffey,* 493 F2d 1304; *Williams v Sidley Austin Brown & Wood, L.L.P.,* 38 AD3d 219.) II. The amended complaint pleads breach of fiduciary duty. (*Franco v English,* 210 AD2d 630; *Breslin Realty Dev. Corp. v Shaw,* 17 Misc 3d 1110[A], 2007 NY Slip Op 51919[U]; *Briarpatch Ltd., L.P. v Frankfurt Garbus Klein & Selz, P.C.,* 13 AD3d 296, 4 NY3d 707; *Dembitzer v Chera,* 285 AD2d 525; *Town Line Plaza Assoc. v Contemporary Props.,* 223 AD2d 420; *Pucci v Santi,* 711 F Supp 916; *Matter of Clarke,* 12 NY2d 183; *Heaven v McGowan,* 40 AD3d 583; *AUSA Life Ins. Co. v Ernst & Young,* 206 F3d 202.) III. Plaintiffs properly allege aiding and abetting claims. (*Global Mins. & Metals Corp. v Holme,* 35 AD3d 93, 8 NY3d 804; *Houbigant, Inc. v Deloitte & Touche,* 303 AD2d 92; *Wight v BankAmerica Corp.,* 219 F3d 79; *State St. Trust Co. v Ernst,* 278 NY 104; *Wedbush Morgan Sec., Inc. v Robert W. Baird & Co.,* 320 F Supp 2d 123; *OSRecovery, Inc. v One Groupe Intl., Inc.,* 354 F Supp 2d 357; *Lehman Bros. Commercial Corp. v Minmetals Intl. Non-Ferrous Metals Trading Co.,* 179 F Supp 2d 118; *Whitney v Citibank, N.A.,* 782 F2d 1106; *Pludeman v Northern Leasing Sys., Inc.,* 10 NY3d 486; *Lanzi v Brooks,* 43 NY2d 778.) IV. The amended complaint pleads recklessness/gross negligence claims. (*Ultramares Corp. v Touche,* 255 NY 170; *Prudential Ins. Co. of Am. v Dewey, Ballantine, Bushby, Palmer & Wood,* 80 NY2d 377; *Caprer v Nussbaum,* 36 AD3d 176; *Foothill Capital Corp. v Grant Thornton, L.L.P.,* 276 AD2d 437; *Ambassador Factors v Kandel & Co.,* 215 AD2d 305; *Velazquez v Decaudin,* 49 AD3d 712; *Houbigant, Inc. v Deloitte & Touche,* 303 AD2d 92; *Bank of Tokyo Trust Co. v Friedman,* 197 AD2d 354; *Sommer v Federal Signal Corp.,* 79 NY2d 540; *Novak v Kasaks,* 216 F3d 300.)

*Paul, Weiss, Rifkind, Wharton & Garrison LLP,* New York City (*Gerard E. Harper, Jacqueline P. Rubin, Jana C. Ramsey* and *Jaren E. Casazza* of counsel), for respondent. I. Plaintiffs' amended complaint states no cause of action for fraud. (*Lama Holding Co. v Smith Barney,* 88 NY2d 413; *Pludeman v Northern Leasing Sys., Inc.,* 10 NY3d 486; *Matter of Zorach v Clauson,* 303 NY 161; *Polonetsky v Better Homes Depot,* 97 NY2d 46; *Greschler v Greschler,* 51 NY2d 368; *Simcuski v Saeli,* 44 NY2d 442; *Friedman v Arizona World Nurseries, Ltd.*

*Partnership,* 730 F Supp 521, 927 F2d 594; *Schatz v Rosenberg,* 943 F2d 485; *Abbott v Herzfeld & Rubin,* 202 AD2d 351; *National Westminster Bank v Weksel,* 124 AD2d 144.) II. Plaintiffs' amended complaint states no cause of action for breach of fiduciary duty. (*In re Bayou Hedge Funds Inv. Litig.,* 472 F Supp 2d 528; *Estate of Ginor v Landsberg,* 960 F Supp 661, 159 F3d 1346; *Ackerman v National Prop. Analysts, Inc.,* 887 F Supp 494; *Morin v Trupin,* 778 F Supp 711, 809 F Supp 1081, 823 F Supp 2d 201; *Quintel Corp., N.V. v Citibank, N.A.,* 589 F Supp 1235; *Briarpatch Ltd., L.P. v Frankfurt Garbus Klein & Selz, P.C.,* 13 AD3d 296; *Goldstein v Securities & Exch. Commn.,* 451 F3d 873; *Franco v English,* 210 AD2d 630; *Breslin Realty Dev. Corp. v Shaw,* 17 Misc 3d 1100[A], 2007 NY Slip Op 51919[U]; *Pucci v Santi,* 711 F Supp 916.) III. Plaintiffs' amended complaint states no cause of action for aiding and abetting. (*Williams v Sidley Austin Brown & Wood, L.L.P.,* 38 AD3d 219; *Caprer v Nussbaum,* 36 AD3d 176; *Briarpatch Ltd., L.P. v Frankfurt Garbus Klein & Selz, P.C.,* 13 AD3d 296; *Kaufman v Cohen,* 307 AD2d 113; *Shea v Cornell Univ.,* 192 AD2d 857; *National Westminster Bank v Weksel,* 124 AD2d 144; *In re Sharp Intl. Corp.,* 403 F3d 43; *In re Bayou Hedge Funds Inv. Litig.,* 472 F Supp 2d 528; *JP Morgan Chase Bank v Winnick,* 406 F Supp 2d 247; *VTech Holdings, Ltd. v Pricewaterhouse Coopers, LLP,* 348 F Supp 2d 255.) IV. Plaintiffs' amended complaint states no cause of action for gross recklessness/negligence. (*East Meadow Driving School v Bell Atl. Yellow Pages Co.,* 273 AD2d 270; *Ultramares Corp. v Touche,* 255 NY 170; *Colnaghi, U.S.A. v Jewelers Protection Servs.,* 81 NY2d 821; *Sommer v Federal Signal Corp.,* 79 NY2d 540.)

## OPINION OF THE COURT

GRAFFEO, J.

Following the collapse of a hedge fund, certain limited partners brought this action sounding in fraud and breach of fiduciary duty against the fund's attorneys based on the law firm's failure to disclose improper fund activities and its misrepresentations in the offering memoranda. For the reasons that follow, we affirm the Appellate Division order dismissing the complaint.

In February 2003, John Whittier launched Wood River Partners, LP, a hedge fund in the form of a limited partnership. Whittier was the sole principal and managing member of Wood

River Associates, LLC, the hedge fund's general partner.[1] According to Wood River's offering memorandum, the fund sought "to achieve capital appreciation through the combination of long and short equity investments in a diversified number of industries, with a particular emphasis in media and communications, technology and technology-related companies." The offering memorandum also represented that American Express Tax and Business Services, Inc. (TBS) was Wood River's auditor and that, to ensure adequate investment diversification, individual holdings in the fund's portfolio would be capped at 10% of the total assets at any given time, based on the original cost of the stock. As Wood River's legal counsel, defendant Seward & Kissel, LLP (S&K) drafted the original offering memorandum as well as periodic updates.[2]

Plaintiffs are 16 of Wood River's limited partners who invested in the fund between 2003 and 2005.[3] Unbeknownst to plaintiffs, in 2004 or early 2005, Wood River—at Whittier's direction—began to invest heavily in the stock of Endwave Corporation. By the summer of 2005, Wood River's investment in Endwave shares represented approximately 65% of the fund's total assets and over 35% of Endwave's outstanding shares. After peaking at $54 per share in mid-July, Endwave's share price gradually declined until it plummeted to $14 in late September. As a result, Whittier was unable to meet plaintiffs' redemption requests. S&K resigned as Wood River's counsel on September 30, 2005.

In October 2005, the Securities and Exchange Commission (SEC) brought an action in federal court against Whittier and the Wood River entities seeking to enjoin them from violating various securities laws and to impose civil penalties. At the SEC's request, the United States District Court for the Southern District of New York appointed a receiver for the Wood River entities and issued an injunction preventing any lawsuits

---

1. Whittier was also the principal executive of Wood River Capital Management, LLC, the hedge fund's investment manager.

2. The record contains two 29-page offering memoranda dated June 2004 and April 2005. The parties agree that each of the offering memoranda prepared by S&K from 2003 to 2005 was identical in all aspects relevant to this appeal.

3. As of June 2004, new limited partners were obligated to invest at least $500,000.

against Wood River absent the court's permission.[4] A federal grand jury subsequently indicted Whittier for securities fraud and he pleaded guilty to three counts in May 2007. During his allocution, Whittier admitted that he intentionally concealed the extent of Wood River's position in Endwave.

Plaintiffs commenced this action against S&K, TBS and a third entity in March 2006, alleging causes of action against S&K for, among other things, fraud, aiding and abetting fraud, gross negligence and breach of fiduciary duty. They seek $200 million in damages.

The July 2006 amended complaint presents three main allegations against S&K. First, plaintiffs assert S&K learned at some point in 2005 that Wood River invested more than 10% of its assets in Endwave stock in violation of the 10% restriction contained in the offering memoranda. According to plaintiffs, S&K nonetheless persisted in drafting offering memoranda falsely representing that Wood River was adhering to the 10% cap as part of its investment policy. Second, plaintiffs claim that S&K falsely stated in the offering memoranda that TBS was Wood River's auditor even though S&K knew from the inception that TBS had not been retained to perform any auditing work. Third, plaintiffs allege S&K learned in January 2005 that Wood River had violated securities laws by failing to file required notices when Wood River obtained 5% and, later, 10% of Endwave's stock.[5] Plaintiffs maintain that S&K breached fiduciary duties owed to them, as limited partners, by failing to disclose the SEC violations to them.

S&K and TBS each moved to dismiss the complaint pursuant to CPLR 3211. Supreme Court denied the motions. The Appellate Division reversed, granted the motions and dismissed the complaint as against them (46 AD3d 400 [1st Dept 2007]).[6] We granted plaintiffs leave to appeal (11 NY3d 705 [2008]).

Plaintiffs principally argue that the Appellate Division erred in dismissing their fraud and aiding and abetting fraud claims

---

4. Plaintiffs never sought permission to sue Wood River.

5. The Securities Exchange Act of 1934 requires persons to report the acquisition of more than five percent of a corporation's common stock (see 15 USC § 78m [d]). The Act contains similar reporting requirements upon the acquisition of more than 10% of a single equity security (see 15 USC § 78p [a]).

6. Plaintiffs do not challenge the dismissal of the complaint as against TBS and apparently have not pursued their claims against a third defendant—Trident Financial Services, LLC. Therefore, this appeal solely concerns plaintiffs' causes of action against S&K.

against S&K. They contend that the complaint adequately pleads these claims because it alleges that S&K drafted offering memoranda falsely representing that a 10% investment cap was in place and that TBS was Wood River's auditor, despite knowing that these representations were false. S&K counters that, even under CPLR 3211's liberal pleading requirements, the fraud and aiding and abetting fraud claims fail because plaintiffs' allegations relating to S&K's knowledge of falsity are too conclusory and without a factual basis.

The elements of a cause of action for fraud require a material misrepresentation of a fact, knowledge of its falsity, an intent to induce reliance, justifiable reliance by the plaintiff and damages (*see Ross v Louise Wise Servs., Inc.*, 8 NY3d 478, 488 [2007]; *Lama Holding Co. v Smith Barney*, 88 NY2d 413, 421 [1996]). A claim rooted in fraud must be pleaded with the requisite particularity under CPLR 3016 (b).

We recently explored the pleading requirements of CPLR 3016 (b) in *Pludeman v Northern Leasing Sys., Inc.* (10 NY3d 486 [2008]). In that case, we noted that the purpose underlying the statute is to inform a defendant of the complained-of incidents. We cautioned that the statute "should not be so strictly interpreted as to prevent an otherwise valid cause of action in situations where it may be impossible to state in detail the circumstances constituting a fraud" (*id.* at 491 [internal quotation marks and citation omitted]). Although there is certainly no requirement of "unassailable proof" at the pleading stage, the complaint must "allege the basic facts to establish the elements of the cause of action" (*id.* at 492). We therefore held that CPLR 3016 (b) is satisfied when the facts suffice to permit a "reasonable inference" of the alleged misconduct (*id.*). And, "in certain cases, less than plainly observable facts may be supplemented by the circumstances surrounding the alleged fraud" (*id.* at 493).

█ Here, whether the claim is labeled fraud or aiding and abetting fraud, we conclude that neither the allegations in the complaint nor the surrounding circumstances give rise to a reasonable inference that S&K participated in a scheme to defraud or knew about the falsity of the two contested statements in the offering memoranda. The amended complaint conclusorily alleges that at some unspecified point in 2005 S&K became aware that more than 10% of Wood River's holdings were invested with Endwave but, nonetheless, S&K continued to issue offering memoranda falsely representing that Wood River would not

invest more than 10% of its assets in any given security.[7] In support of this allegation, plaintiffs assert that S&K was informed in January 2005 that Wood River had purchased 10% of Endwave's stock. But the fact that S&K may have been aware that Wood River owned 10% of Endwave's stock is not material to whether Wood River invested more than 10% of its total assets in Endwave, particularly where there is no indication that S&K was ever informed of Wood River's overall asset levels or the cost basis of the Endwave shares. Plaintiffs' reliance on a 2002 letter—predating the existence of Wood River by nearly a year—from a S&K attorney to Whittier discussing the performance of a separate fund is similarly unavailing.

Nor do the surrounding circumstances breathe life into plaintiffs' fraud claim premised on the 10% cap representation. Unlike the individual corporate officer defendants in *Pludeman*, each of whom managed a company implicated in a nationwide fraudulent scheme covering a span of years, S&K was outside counsel to Wood River, whose manager—Whittier—was convicted of securities fraud. Notably, plaintiffs do not dispute S&K's assertion that they secured Whittier's assistance in drafting the amended complaint. The absence of any firm factual pleadings relevant to S&K's knowledge that Wood River breached the 10% restriction or any fraudulent scheme between Whittier and S&K is even more conspicuous in light of Whittier's cooperation with plaintiffs.

We likewise find the amended complaint's alternative allegation of fraud or aiding and abetting fraud—that S&K knew TBS was not Wood River's auditor yet continued to list TBS in the offering memoranda—to be similarly conclusory. As the Appellate Division recognized, the complaint elsewhere alleges that in the summer of 2005 TBS falsely represented that it was the fund's auditor and would conduct an audit. In short, although we are mindful that a plaintiff need not produce absolute proof of fraud and that there may be cases in which particular facts are within a defendant's possession, it is also true that the strength of the requisite inference of fraud will vary based on the facts and context of each case. Under the facts of this case, we believe that the allegations in the complaint, coupled with the surrounding circumstances, do not give rise to a reasonable

7. As S&K points out, most of the plaintiffs had already invested in Wood River before S&K allegedly learned of the 10% cap violation and, therefore, could not have relied on this representation—a necessary element of a fraud claim.

inference that S&K committed fraud or aided and abetted Wood River's or Whittier's fraudulent activities.

Plaintiffs next contend that the Appellate Division erroneously dismissed their breach of fiduciary duty claim. They claim that S&K owed them a fiduciary duty and breached that duty by failing to reveal Wood River's fraudulent actions, in particular, the fund's violation of SEC reporting requirements in connection with its ownership of 5% and, later, 10% of Endwave's stock.

A fiduciary relationship arises "between two persons when one of them is under a duty to act for or to give advice for the benefit of another upon matters within the scope of the relation" (*EBC I, Inc. v Goldman, Sachs & Co.*, 5 NY3d 11, 19 [2005] [internal quotation marks and citation omitted]). Put differently, "[a] fiduciary relation exists when confidence is reposed on one side and there is resulting superiority and influence on the other" (*AG Capital Funding Partners, L.P. v State St. Bank & Trust Co.*, 11 NY3d 146, 158 [2008] [internal quotation marks and citation omitted]). Ascertaining the existence of such a relationship inevitably requires a fact-specific inquiry.

Here, plaintiffs do not allege that they had direct contact or any relationship—contractual or otherwise—with S&K. Indeed, plaintiffs acknowledge that the offering memoranda advised prospective limited partners to consult their own legal counsel prior to investing in Wood River. Plaintiffs nevertheless contend that S&K's attorney-client relationship with Wood River in and of itself created a fiduciary relationship between S&K and the limited partners themselves. We disagree.

The Appellate Divisions have held that the fiduciary duties owed by a limited partnership's attorney to that entity do not extend to the limited partners (*see Briarpatch Ltd., L.P. v Frankfurt Garbus Klein & Selz, P.C.*, 13 AD3d 296, 297 [1st Dept 2004], *lv denied* 4 NY3d 707 [2005]; *Kushner v Herman*, 215 AD2d 633 [2d Dept 1995]; *but see Franco v English*, 210 AD2d 630, 634 [3d Dept 1994]). Federal courts applying New York law likewise have consistently rejected such a duty (*see e.g. In re Bayou Hedge Funds Inv. Litig.*, 472 F Supp 2d 528, 531 [SD NY 2007]; *Estate of Ginor v Landsberg*, 960 F Supp 661, 667 [SD NY 1996], *affd* 159 F3d 1346 [2d Cir 1998]; *Quintel Corp., N.V. v Citibank, N.A.*, 589 F Supp 1235, 1241-1242 [SD NY 1984]; *see also* 3 Mallen and Smith, Legal Malpractice § 26:8 [2009] [citing New York cases with approval]).

We concur with these precedents, particularly given that we have found similarities between limited partners and the shareholders of a corporation (*see Lichtyger v Franchard Corp.*, 18 NY2d 528, 536 [1966] [observing that a limited partner "is in a position analogous to that of a corporate shareholder, an investor who likewise has limited liability and no voice in the operation of an enterprise" (internal quotation marks omitted)]; *Ruzicka v Rager*, 305 NY 191, 198 [1953], *rearg denied* 305 NY 798 [1953] [recognizing the "quasi-corporate aspects of a limited partnership and the quasi-shareholder status of a limited partner"]; *see also* 3 Bromberg and Ribstein on Partnership § 11.01 [c]). It is well settled that a corporation's attorney represents the corporate entity, not its shareholders or employees (*see Talvy v American Red Cross in Greater N.Y.*, 205 AD2d 143, 149 [1st Dept 1994], *affd for reasons stated below* 87 NY2d 826 [1995]; *Rechberger v Scolaro, Shulman, Cohen, Fetter & Burstein, P.C.*, 45 AD3d 1453 [4th Dept 2007]; *Griffin v Anslow*, 17 AD3d 889, 893 [3d Dept 2005]; *see also* Rules of Professional Conduct rule 1.13 [a] [22 NYCRR 1200.13 (a)]). We therefore hold that S&K's representation of this limited partnership, without more, did not give rise to a fiduciary duty to the limited partners. Hence, plaintiffs' breach of fiduciary duty claim against S&K was properly dismissed.

■ To the extent plaintiffs assert claims for fraud or aiding and abetting predicated on S&K's silence, they similarly fail for lack of a duty to disclose (*see Gurnee v Hasbrouck*, 267 NY 57, 62 [1935]; *Mitschele v Schultz*, 36 AD3d 249, 254-255 [1st Dept 2006]; Kreindler, Rodriguez, Beekman and Cook, New York Law of Torts § 1.70, at 73-76 [14 West's NY Prac Series 1997]). In the absence of a fiduciary relationship, we perceive no legal duty obligating S&K to make affirmative disclosures to plaintiffs under the circumstances of this case. We have considered plaintiffs' remaining arguments and find them to be without merit.

Accordingly, the order of the Appellate Division, insofar as appealed from, should be affirmed, with costs.

Judges CIPARICK, READ, SMITH, PIGOTT and JONES concur; Chief Judge LIPPMAN taking no part.

Order, insofar as appealed from, affirmed, with costs.